Justin Carlson and Rebecca Lombard
justin.carlson.legal@gmail.com
171 Elkview Dr.
Forest City, PA 18421
570-234-9808
**Plaintiffs**

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUSTIN CARLSON et al.,** **PLAINTIFFS,** | **NO. 3:26-CV-01231** **CAMONI, M.J.** |
| **vs.** | |
| **MICHELLE GRAZIANO et al.** **DEFENDANTS.** | **PLAINTIFFS' BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION AGAINST DEFENDANT CHILDREN'S HOSPITAL OF PHILADELPHIA (CHOP)** |

**BRIEF**

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................... 1

PROCEDURAL HISTORY.......................................................................................2

ISSUES PRESENTED............................................................................................. 2

RELEVANT FACTS...............................................................................................3

ARGUMENT..........................................................................................................5

    I. Plaintiffs are likely to succeed on the merits.....................................................5

        I.A. The seizure lacked probable cause and exigency............................................. 6

        I.B. CHOP acted under color of state law in obtaining and retaining the data.........8

        I.C. The genetic data at issue includes Plaintiffs' own protected information......... 9

        I.D. Equitable expungement/deletion is a recognized remedy when the government (or joint actors) unlawfully collect and retain sensitive personal records.............. 10

        I.E. State medical-record retention rules do not authorize retention of unconstitutionally seized genetic data.................................................................. 12

    II. Ongoing and Irreparable Harm Necessitating Injunctive Relief................... 13

    III. The balance of equities and public interest favor relief.............................. 15

REQUESTED RELIEF............................................................................................ 15

BOND (FED. R. CIV. P. 65(C))............................................................................17

**TABLE OF AUTHORITIES**

**CASES**

*Acierno v. New Castle County,*
  40 F. 3d 645 - Court of Appeals, 3rd Circuit 1994. ……………………..…… 12

*Adickes v. S.H. Kress & Co.,*
  398 U.S. 144, 152 (1970) …………………………………………….. 8

*Birchfield v. North Dakota,*
  579 US 438 - SC 2016 ……………………………………………….… 12

*Brentwood Academy v. Tennessee Secondary School Athletic Assn.,*
  531 US 288 - SC 2001. ……………………………………………….. 8

*Carlson v. Graziano,*
  Pa: Superior Court 2026 ………………………………...…………….. 6

*Croft v. Westmoreland CYS,*
  103 F.3d 1123, 1126 (3d Cir. 1997) …………………………………..…… 6

*Doe v. Delie,*
  257 F.3d 309 - Court of Appeals, 3rd Circuit 2001 …………………….. 13-14

*Elliott v. Kiesewetter,*
  98 F.3d 47, 59–60 (3d Cir. 1996) ……………………………...………. 16-17

*Felder v. Casey,*
  487 U.S. 131 - SC (1988) …………………………………….…….. 11-12

*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.,*
  847 F.2d 100, 103 (3d Cir. 1988) …………………………………… 17

*Hope v. Warden York County Prison,*
  972 F. 3d 310 - Court of Appeals, 3rd Circuit 2020 …………………….. 1-2

*Howlett v. Rose,*
        496 US 356 - SC 1990 …………………………………………….. 11-12

*In re Petition to Compel Cooperation with Child Abuse Investigation,*
        875 A.2d 365, 377–81 (Pa. Super. Ct. 2005) ………………………………… 6

*In re Y.W.-B.,*
        265 A.3d 602, 623–24, 633–34 (Pa. 2021) …………………………...…… 6

*IN THE INTEREST OF DP,*
        Pa: Superior Court 2013 …………………………………………………… 6

*Lugar v. Edmondson Oil Co.,*
        457 U.S. 922, 935 (1982) ……………………………………….… 8

*Monroe v. Pape,*
        365 U.S. 167, 184 (1961) …………………………………………….. 8

*Mulholland v. Government County of Berks,*
        Pa.,706 F. 3d 227 - Court of Appeals, 3rd Circuit 2 ……………………….. 5-6

*Opticians Ass'n of Am. v. Indep. Opticians of Am.,*
        920 F.2d 187, 197 (3d Cir. 1990) …………………………………………... 1-2

*Paton v. LaPrade,*
        524 F.2d 862, 869 (3d Cir. 1975) ……………………………………..…….. 10

*Reilly v. City of Harrisburg,*
        858 F.3d 173 (3d Cir. 2017) ………………………………………………... 1

*Temple Univ. v. White,*
        941 F.2d 201, 219–20 (3d Cir. 1991) …………………………………… 16-17

*United States v. Mitchell,*
        No. 09-4718 (3d Cir. 2011) ……………………………………………….... 12

*Winter v. NRDC,*
      555 U.S. 7 (2008) ………………………………………………...…1

*Zambelli Fireworks Mfg. Co. v. Wood,*
      592 F.3d 412, 426 (3d Cir. 2010) ……………………………….... 17

**RULES / STATUTES / ACTS**

42 U.S.C. § 1983 ……………………………………………… *passim*

42 USC 2000ff …………………………………………….…… 9

45 C.F.R. § 160.103 …………………………………………….…… 9

Article I § 8 of the Pennsylvania Constitution ………………………… 6

US Fourth Amendment ……………………………………………… 6

US Fourteenth Amendment ……………………………….………… 6-9

**OTHER**

https://www.reuters.com/technology/cybersecurity/23andme-settles-data-breach-lawsuit-30-million-2024-09-13/

https://apnews.com/article/844cc5d373205b33ec4aef16b73a49c6

https://www.newyorker.com/magazine/2025/08/25/the-family-fallout-of-dna-surprises

**INTRODUCTION**

This motion seeks targeted, status quo ante relief: an order requiring CHOP to permanently delete all genetic data and derivative outputs that it obtained or created as a result of the seizure of VC on August 12, 2024, and to cease any use or disclosure of that information. CHOP's continued possession of Plaintiffs' and VC's genetic data—acquired only because a county agency procured an ex parte custody order without oath, affirmation, or probable cause—inflicts ongoing, irreparable informational-privacy harm that cannot be remedied by money damages. Deletion, nonuse, nondisclosure, and sworn certification are the narrowest remedies that halt the continuing injury and preserve the parties' rights while the merits are adjudicated.

Plaintiffs satisfy all four preliminary-injunction factors under *Winter v. NRDC*, 555 U.S. 7 (2008), as applied by the Third Circuit in *Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017): (1) a likelihood of success on the merits; (2) irreparable harm absent relief; (3) the balance of equities favoring Plaintiffs; and (4) the public interest supporting enforcement of constitutional limits on child-welfare interventions and medical-privacy protections. Plaintiffs will show their "*right to relief [is] indisputably clear,*"—*Hope v. Warden York County Prison,* 972 F. 3d 310 - Court of Appeals, 3rd Circuit 2020 and the requested injunction restores the

status quo ante to the fullest extent now possible by halting Defendants' continued use and retention of genetic data they had no right to obtain, and returning the parties to "*the last, peaceable, noncontested status*" that existed before CHOP possessed Plaintiffs' and VC's genetic information.—*Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990).

**PROCEDURAL HISTORY**

Plaintiffs filed this civil action on May 7, 2026. They now move under Rule 65(a) for a preliminary injunction against CHOP concerning genetic data obtained and retained as a result of the August 12, 2024 custody seizure. In related state-court proceedings, the emergency protective custody order was vacated, and the Pennsylvania Superior Court later held that the shelter care application lacked even a minimum threshold level of reliability.

**STATEMENT OF FACTS**

1.     On August 12, 2024, at 3:30 p.m., Defendant Michelle Graziano obtained an oral protective-custody order transferring legal, physical, and medical decision making to CYS. **[Ex-0: A.1,  B.1, C.1]**

2.　　On August 14, the Court explained it acted because it was led to believe that VC *"basically had organs shutting down, was near death, and ... [Plaintiffs were] denying medical care that would have ... kept [VC] alive"*. **[Ex-0: C.1]**

3.　　Later, on October 15, the Court confirmed it did not administer any oath or affirmation to Graziano during the ex parte call while acknowledging an error occurred. **[Ex-0: C.1, E.1]**

4.　　Before the August 12, 2024 oral emergency-custody order was issued, Plaintiffs received no notice of CYS's oral application, were not present for or permitted to participate in the ex parte communication, and had no opportunity to be heard. **[Ex-0: C.2, E.1]**

5.　　No CYS employee had personal knowledge of VC's condition, the procedures conducted, Plaintiffs actions, nor any other event of VC's life at the time of the oral application for protective custody; no affidavits, witnesses, or CPSL reports were presented to the trial court before seizure. **[Ex-0: C.2, D, K.1]**

6.　　Evidence and testimony show that by August 12 VC was medically stable, no organs were "shutting down," Plaintiffs consented to all life-saving procedures, and no additional life-saving interventions were scheduled or performed after the August 12 seizure. **[Ex-0: C.3, C.4, C.9, F, G, K.1]**

7. CHOP's social worker Lindsey Kunkel coordinated with CYS; at CYS's direction, and not of their own volition, Kunkel filed a CPSL report and later CHOP directed police to remove Plaintiffs for trespassing, without any judicial authority ordering separation. **[Ex-0: B.2, C.5, C.6, H]**

8. Though the verbal custody order was issued at 3:30 p.m.; police were not involved until ~8:00 p.m. Plaintiffs were then arrested and removed for trespass, not because of any imminent danger, posed threats, or disorderly conduct, but after they declined to leave without being shown any court order. **[Ex-0: H, I, M]**

9. CHOP then initiated genetic testing of VC under authorization by CYS—data that includes genetic information about biological family members (i.e., Plaintiffs). *Detailed infra.* **[Ex-0: C.7, G.13, J]**

10. CHOP refuses to delete the genetic data despite Plaintiffs' demands. **[Ex-0: J]**

11. At no point did a valid child abuse report ever exist authorizing the release of VC's private medical information to CYS without consent. **[Ex-0: C.5, C.8, E.2, K.3, L]**

12. No CPSL report ever alleged VC's organs were shutting down or that Plaintiffs were preventing medical care that would have kept VC alive.

**STATEMENT OF QUESTIONS INVOLVED**

1.     Whether Plaintiffs are likely to succeed in establishing that Plaintiffs' genetic data was seized without oath or affirmation and without probable cause or exigency, rendering CHOP's acquisition of the data (and refusal to delete it) unconstitutional and actionable under 42 U.S.C. § 1983 (as to CHOP through state-action doctrines).

**Suggested answer: Yes**

2.     Whether continued retention and potential use of Plaintiffs' genetic data constitutes ongoing irreparable injury warranting a preliminary injunction requiring deletion and cessation of use or disclosure.

**Suggested answer: Yes**

3.     Whether the balance of equities and the public interest favor injunctive relief prohibiting retention of medical genetic data obtained solely by virtue of an unlawful seizure.

**Suggested answer: Yes**

**ARGUMENT**

**I. Plaintiffs Are Likely To Succeed On The Merits.**

In an appeal arising from Plaintiffs' state injunction filings challenging VC's seizure and the CPSL investigations, the Pennsylvania Superior Court held that "*the shelter care application lacked even a minimum threshold level of reliability*", was "*in contravention of*" the rules, "*CYS did not establish a causal nexus between Appellants' conduct and V.C.'s condition*" and "*[a]ccordingly, CYS lacked authority to initiate the CHOP referral investigation.*" The Superior Court further cited to the Third Circuit that removing a child "*without an objectively reasonable suspicion of abuse … indeed shocks the conscience.*"—*Mulholland v. Government County of Berks, Pa.,*706 F. 3d 227 - Court of Appeals, 3rd Circuit 2.—*Carlson v. Graziano,* Pa: Superior Court 2026 **[Ex-0: K]**

I.A. The seizure lacked probable cause and exigency.

The US Fourth Amendment and Article I § 8 of the Pennsylvania Constitution require probable cause supported by oath or affirmation before seizure of a person absent exigent circumstances. And under the US Fourteenth Amendment, the Third Circuit has long held that child removals must be supported by "*some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been*

*abused or is in imminent danger of abuse.*"—*Croft v. Westmoreland CYS*, 103 F.3d 1123, 1126 (3d Cir. 1997). Seizing a child "*without reasonable factual support*" can "*shock the conscience.*"—*Mulholland supra.* Pennsylvania courts, addressing pre-dependency investigative orders, likewise cabin CPSL authority within Fourth-Amendment limits. See *In re Petition to Compel Cooperation with Child Abuse Investigation*, 875 A.2d 365, 377–81 (Pa. Super. Ct. 2005) (home entry requires probable cause limits); *In re Y.W.-B.*, 265 A.3d 602, 623–24, 633–34 (Pa. 2021) (reaffirming constitutional constraints); *IN THE INTEREST OF DP*, Pa: Superior Court 2013 (requiring adherence to the CPSL definition of "child abuse"). Further, Pa.R.J.C.P. 1210—the Juvenile Court rule governing protective custody—expressly cites *Petition to Compel supra.*, a case applying Fourth Amendment and Article I, § 8 limits to CPSL investigative intrusions, alongside discussion of due process requirements in emergency child-custody removals.

If probable cause is required to compel parental cooperation in a CPSL search of the home, it follows a fortiori that equivalent or greater constitutional protection is required to handcuff and forcibly separate parents from a child, seize a child, and take genetic data through state-asserted custody. Here, Plaintiffs allege Defendants accomplished all of that without a warrant, without probable cause, without oath or

affirmation, without notice or a hearing **[MF# 3, 4]**, and without *even a minimum threshold level of reliability*.

The issuing judge admitted he did not administer any oath or affirmation before issuing the verbal order, and no sworn witness, affidavit, or other contemporaneous verified documentation with personal knowledge supported probable cause. **[MF# 3, 5]** The predicate multi-level hearsay assertions of organ failure, denial of life-saving care, and potential death, were egregiously false as shown by CYS's own witnesses testimony. The morning of August 12 VC was deemed "*stable in the last 24 hours.*" Plaintiffs had approved all life-saving care and had saved VC's life. **[MF# 2, 6]** The use of administrative process over immediate police involvement, the allowance of unsupervised access after the custody order was obtained, a nearly 5 hour long delay before arrest, and the absence of any post-seizure life-saving interventions all negate exigency. **[MF# 6, 7, 8]** Plaintiffs are likely to prove, even on the present pre-discovery record alone, that the custody seizure was unlawful; indeed, the Pennsylvania Superior Court has already so held.

I.B. CHOP acted under color of state law in obtaining and retaining the data.

Private liability under § 1983 attaches where a private entity is a willful participant in joint activity with the State, where the challenged conduct bears a sufficiently

close nexus to the State to be fairly attributable to it, or where private conduct is entwined with state authority.

Here, the challenged conduct was tied to, and made possible by, state action at each material step. Defendant Lindsey Kunkel released VC's private medical information to CYS absent a report of suspected "child abuse" existing. **[MF# 11]** CYS through Defendant Michelle Graziano obtained the verbal custody order first, *then* CYS through Defendant Diana Roszel provided "*overt*" and "*significant encouragement*" to Kunkel to file a new CPSL report, in which her and Defendant Dr. Alexandra Medoro operated as "*a willful participant in joint activity*" in aid of that asserted state custody.—*Brentwood Academy v. Tennessee Secondary School Athletic Assn.*, 531 US 288 - SC 2001. Defendant CHOP's staff then orchestrated the parents' removal from the hospital claiming an "*order*" stated "*upon further notice, you are not able to be permitted at the hospital, no contact to the hospital, until they further the investigation.*" **[Ex-0: H]** Yet no such order ever existed.—See *Monroe v. Pape*, 365 U.S. 167, 184 (1961) ("*Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken `under color of' state law.*"). Philadelphia police officers acted on CHOP's request by arresting Plaintiffs for trespass rather than pursuant to any judicial directive or any imminent

threat.—*Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 935 (1982) ("*[J]oint participation with state officials… is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment.*"). On these facts, "*Private persons, jointly engaged with state officials… are acting 'under color' of elaw.*"—*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). **[MF# 7, 8, 9, 11]**

I.C. The genetic data at issue includes Plaintiffs' own protected information.

Federal law recognizes that a child's genetic testing inherently reveals genetic information about biological relatives. "*Genetic information*" includes "*the genetic tests of family members*" and "*manifestation of a disease or disorder in family members.*"—42 USC 2000ff: Definitions. HIPAA defines "*family member*" to include first- through fourth-degree relatives, then defines "*genetic information*" to include "*The genetic tests of <u>family members</u> of the individual;*". 45 C.F.R. § 160.103. CHOP's retention therefore burdens not only VC's privacy but also Plaintiffs' personal genetic privacy interests.

I.D. Equitable expungement/deletion is a recognized remedy when the government (or joint actors) unlawfully collect and retain sensitive personal records.

Federal courts have equitable authority to order expungement or destruction of records to vindicate constitutional rights, but must balance the individual's harm

against the government's need to retain the records. The Third Circuit directs courts to weigh "*the accuracy and adverse nature of the information, the availability and scope of dissemination of the records, the legality of the methods by which the information was compiled, the existence of statutes authorizing the compilation and maintenance, and prohibiting the destruction, of the records, and the value of the records to the Government.*"—*Paton v. LaPrade*, 524 F.2d 862, 869 (3d Cir. 1975).

### *Paton's supra.* **balance**

**Adverse Nature**—Genetic data is uniquely sensitive and permanent; when breached at scale (e.g., 23andMe's 2023 incident exposing ~6.9M users), attackers even targeted specific ethnic groups and advertised stolen data for sale, underscoring concrete risks from mere retention. [1] States have also sued to block the sale of millions of customers' DNA profiles in bankruptcy. [2] Beyond commercial misuse, DNA results routinely trigger familial/emotional upheaval (e.g., unexpected parentage), with documented mental-health and relationship

---

[1]https://www.reuters.com/technology/cybersecurity/23andme-settles-data-breach-lawsuit-30-million-2024-09-13/

[2]https://apnews.com/article/844cc5d373205b33ec4aef16b73a49c6?utm_source=chatgpt.com

fallout. [3] Plaintiffs do not rely on these downstream harms—they merely underscore the ongoing irreparable harm—*detailed infra.*

**Dissemination**—CYS through Graziano and Roszel set the seizure in motion but placed the data in private hands; CHOP now holds—and can route to labs/vendors—information that Plaintiffs never lawfully authorized to be collected.

**Legality**—The initial custody seizure lacked oath/affirmation and probable cause; the genetic collection followed without due process and over Plaintiffs' refusal; and the Pa Superior Court has already held it was in contravention of the juvenile rules rendering both the initial acquisition and ongoing retention unlawful.

**Maintenance Laws**—CHOP's refusal to delete rests on internal policies and "*accreditation standards,*" which cannot override federal constitutional limits or §1983 remedies—*detailed infra.*

**Value to the Government**—None. It's possessed by a private entity. Retaining unlawfully obtained family genetic data serves no legitimate governmental interest and undermines public confidence in child-welfare and medical systems.

---

[3]https://www.newyorker.com/magazine/2025/08/25/the-family-fallout-of-dna-surprises?utm_source=chatgpt.com

<u>I.E. State medical-record retention rules do not authorize retention of unconstitutionally seized genetic data.</u>

State record-keeping statutes cannot trump federal constitutional rights or curtail § 1983 remedies. As the Supreme Court held, "*Conduct by persons acting under color of state law which is wrongful under 42 U. S. C. § 1983 or § 1985(3) cannot be immunized by state law.*"—*Howlett v. Rose*, 496 US 356 - SC 1990. And state rules may not "*burden[] the exercise of the federal right*" or operate in a manner "*inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law.*"—*Felder v. Casey*, 487 U.S. 131 - SC (1988). Thus, if Defendants obtained genetic data only by means of an unconstitutional seizure, state retention rules cannot authorize keeping it. Continued retention is part of the ongoing violation, and the proper remedy is deletion with sworn certification.

## II. Ongoing and Irreparable Harm Necessitating Injunctive Relief

"*[B]lood draws are "significant bodily intrusions." ... [A] blood test, unlike a breath test, places in the hands of law enforcement authorities a sample that can be preserved, and from which it is possible to extract information beyond*" the authorized scope—a fact that "*may result in anxiety for the person tested.*"—*Birchfield v. North Dakota*, 579 US 438 - SC 2016.

DNA sampling reveals *"complex, comprehensive, [and] inherently private information"* about an individual and *"the search of the sample is quite intrusive, severely affecting Mitchell's expectation of privacy in his most intimate matters."*—*United States v. Mitchell*, No. 09-4718 (3d Cir. 2011). CHOP's refusal to delete letter admits they are holding on to a *"vast size of information"* in multiple locations (*"GDL", "CHOP medical records", "back-up systems or servers"*). **[Ex-0: J]**

This matter is unlike in *Birchfield and Mitchell supra.*, where the "DNA" was taken from an arrestee with *"a diminished expectation of privacy"*, the sample only revealed identity, and was retained by the government. Here we have a "genetic" blood draw seized from an innocent family, which contains genetic markups, during an unlawful and egregious showing of arbitrary power that the Pa Superior held *"lacked even a minimum threshold level of reliability"*, and the information was handed to and remains in possession of a private entity serving no governmental purpose at all.

Retention of unlawfully acquired genetic data causes ongoing privacy injury that cannot be undone after final judgment. Genetic information is uniquely identifying, predictive, and non-revocable; its disclosure risks reputational, employment,

familial, and decisional harms. It's "*of a peculiar nature, so that compensation in money cannot atone for it*", warranting a preliminary injunction—*Acierno v. New Castle County, 40 F. 3d 645 - Court of Appeals, 3rd Circuit 1994.*

That conclusion is reinforced by the constitutional protection afforded to medical and similarly sensitive personal information. "*There can be no question that ... medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection. ... In Doe v. SEPTA we acknowledged that the privacy interest in information regarding one's HIV status is particularly strong*".—*Doe v. Delie*, 257 F.3d 309 - Court of Appeals, 3rd Circuit 2001. The continued retention of unlawfully compiled information is itself a cognizable injury warranting equitable relief.—*Paton supra.* Once such data has been taken, stored, copied, or disseminated, money damages cannot restore confidentiality; where retention itself is the continuing harm, and deletion is a narrowly tailored and appropriate injunction.

**III. The balance of equities and public interest favor relief.**

The requested order narrowly restrains only the use and retention of data that CHOP obtained by virtue of an unlawful seizure. It imposes minimal administrative burden (deletion and certification) while averting profound privacy

harms to a newborn and her family. The public interest is always served by vindicating constitutional safeguards in child-welfare interventions and by ensuring that hospitals do not retain or leverage genetic data obtained through unlawful custody maneuvers. To the extent CHOP invokes state retention policies, those yield to federal constitutional rights and cannot justify ongoing invasion of genetic privacy. Finally, deletion has no negative impact on public interest.

**REQUESTED RELIEF**

Plaintiffs respectfully request that the Court enter an order that:

1. **Prohibits Use/Disclosure.** Enjoins CHOP from accessing, using, analyzing, disclosing, transmitting, uploading, transferring, copying, or otherwise using any genetic data, raw or processed, and any derivative outputs, including reports, annotations, interpretations, sequence or variant files, and related materials, obtained or created as a result of the August 12, 2024 seizure of VC, except as necessary to comply with the Court's Order.

2. **Deletion.** Requires CHOP, within 14 days, to permanently delete and purge all such genetic data and derivative outputs, including raw genetic test data, sequence or variant files, interpretive reports, and any copies maintained in CHOP

medical records, laboratories, archives, backup systems, servers, emails, spreadsheets, PDFs, and any other repositories within CHOP's custody or control.

3. **Third-Party Directives.** Requires CHOP, within 7 days, to direct any agents, vendors, laboratories, contractors, affiliates, repositories, and any other third parties, in any location, that received, stored, processed, analyzed, maintained, or otherwise possess such data or outputs by or through CHOP's transmission, disclosure, upload, transfer, or other provision of the data, whether on CHOP's behalf or otherwise, to cease any use or disclosure of that information and to delete it.

4. **Certification and Inventory.** Requires CHOP, within 14 days, to file a sworn certification from a knowledgeable CHOP official identifying each repository from which deletion occurred; identifying every location where any genetic data or derivative outputs were stored, maintained, transmitted, copied, analyzed, or otherwise existed; identifying every person or entity to whom such data or outputs were sent, disclosed, uploaded, transferred, or otherwise provided; certifying deletion from each such location; and attaching all third-party certifications of compliance.

**BOND (FED. R. CIV. P. 65(C))**

Plaintiffs respectfully request waiver of security or, alternatively, a nominal bond of $100. In this noncommercial case, the Court may weigh "*the possible loss to the enjoined party*" against "*the hardship that a bond requirement would impose on the applicant,*" and may waive Rule 65(c) security where "*the balance of these equities weighs overwhelmingly*" in Plaintiffs' favor.—*Elliott v. Kiesewetter*, 98 F.3d 47, 59–60 (3d Cir. 1996). The Third Circuit has likewise instructed that a court should consider "*the impact that a bond requirement would have on enforcement*" of an important federal right to avoid "*undue restriction.*"—*Temple Univ. v. White*, 941 F.2d 201, 219–20 (3d Cir. 1991).

Here, CHOP's refusal letter confirms that some of the data, under a two-year retention policy, is already scheduled for deletion in August 2026, while other data, under a longer retention policy, will be retained until ten years after VC turns eighteen. That confirms the requested relief would operate within CHOP's existing retention framework, rather than impose any materially new compliance cost, and thus supports Plaintiffs' waiver request under the "*exceptionally narrow circumstance where the nature of the action necessarily precludes any monetary harm to the defendant.*"—*Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010). If the Court nevertheless requires security, it should be nominal,

because any possible monetary loss is minimal and "*the amount of the bond is left to the discretion of the court.*"—*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988).

**WHEREFORE,** Plaintiffs respectfully request that the Court grant the requested preliminary injunction, enter the accompanying Proposed Order, consider the accompanying Proposed Findings of Fact and Conclusions of Law, waive security or set nominal security in the amount of $100, and grant such other relief as the Court deems just and proper.

**Respectfully submitted on this day of June 19, 2026**

*Justin Carlson  Rebecca Lombard*

Justin Carlson; Rebecca Lombard; and
VC, a Minor, by Justin Carlson
171 Elkview Dr.
Forest City, PA 18421
570-234-9808
justin.carlson.legal@gmail.com

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUSTIN CARLSON et al.,**<br>**PLAINTIFFS,**<br><br>vs.<br><br>**MICHELLE GRAZIANO et al.**<br>**DEFENDANTS.** | **NO. 3:26-CV-01231**<br>**CAMONI, M.J.**<br><br>**CERTIFICATE OF USE OF**<br>**GENERATIVE AI** |

I certify that I used OpenAI's ChatGPT to assist with legal research, organization, and polishing/editing portions of this filing. All factual assertions and legal arguments are my own. I personally reviewed and edited the final filing, independently checked the accuracy of the legal authorities and citations relied upon, and verified that the cited cases and authorities accurately pertain to the propositions for which they are used. Because generative AI may inadvertently slightly alter quoted language during editing, I also reviewed quoted material against the source authorities to the best of my ability.

**Respectfully submitted on this day of June 19, 2026**

*Justin Carlson  Rebecca Lombard*

Justin Carlson; Rebecca Lombard; and
VC, a Minor, by Justin Carlson
171 Elkview Dr.
Forest City, PA 18421
570-234-9808
justin.carlson.legal@gmail.com

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUSTIN CARLSON et al.,** | **NO. 3:26-CV-01231** |
| **PLAINTIFFS,** | **CAMONI, M.J.** |
| **vs.** | |
| **MICHELLE GRAZIANO et al.** | **CERTIFICATE OF COMPLIANCE WITH LR 7.8(b)(2)** |
| **DEFENDANTS.** | |

I certify that the accompanying Brief in Support of Plaintiffs' Motion for Preliminary Injunction complies with Local Rule 7.8(b)(2).

I further certify that this brief contains **3554** words, according to the word-count feature of the word-processing system used to prepare it.

**Respectfully submitted on this day of June 19, 2026**

*Justin Carlson   Rebecca Lombard*

Justin Carlson; Rebecca Lombard; and
VC, a Minor, by Justin Carlson
171 Elkview Dr.
Forest City, PA 18421
570-234-9808
justin.carlson.legal@gmail.com