**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUSTIN CARLSON, et al.,** | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **No. 26-cv-1231-SAC** |
| **MICHELLE GRAZIANO, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF PHILADELPHIA'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................. 1

III. STANDARD OF REVIEW ................................................................................ 6

IV. ARGUMENT ..................................................................................................... 6

  A. **Plaintiffs' § 1983 Claims Against the City Fail Because They Do Not Plausibly Allege an Underlying Constitutional Violation.** ................................................ 6

    1. The Officers Had Probable Cause to Arrest Plaintiffs for Trespass. ............................ 7

    2. Plaintiffs' Familial Association and Procedural Due Process Claims Fail Because the Officers Were Entitled to Rely on CHOP Staff's Representations. ........................................ 9

    3. Plaintiffs Fail to Allege Facts Showing the Officers Seized V.C. ................................. 9

    4. The Complaint Attributes the Alleged Constitutional Injuries to CYS, CHOP, and Judge Legg, Not to the City. .................................................................. 11

  B. **Plaintiffs Fail to Allege Sufficient Facts to State a Monell Claim Against the City.**. 12

    1. A Municipality Cannot Be Held Liable Under § 1983 on a *Respondeat Superior* Theory. ................................................................................ 12

    2. Plaintiffs' Policy and Custom Allegations Are Conclusory and Unsupported. ............ 12

    3. Plaintiffs' Allegation that the Officers Changed the Charges Against Them Does Not State a Constitutional Violation or Municipal Policy. .......................................... 14

  C. **Plaintiffs' State Law Claims Against the City Are Barred by the Pennsylvania Political Subdivision Tort Claims Act.** ................................................................ 15

V. CONCLUSION ................................................................................................. 16

## TABLE OF AUTHORITIES

**CASES**

Ashcroft v. Iqbal, 556 U.S. 662 (2009)......................................................................................6

Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397 (1997)................................................................12

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)........................................................ *passim*

Berg v. County of Allegheny, 219 F.3d 261 (3d Cir. 2000)..........................................................10

Brower v. County of Inyo, 489 U.S. 593 (1989) ........................................................................10

City of Canton v. Harris, 489 U.S. 378 (1989) .........................................................................13

City of Los Angeles v. Heller, 475 U.S. 796 (1986) ....................................................................7

Connick v. Thompson, 563 U.S. 51 (2011) ................................................................................6

Croft v. Westmoreland Cnty. Children & Youth Servs., 103 F.3d 1123 (3d Cir. 1997)................9

Cudjoe v. Dep't of Veterans' Affairs, 426 F.3d 241 (3d Cir. 2005)........................................1 n.1

Curley v. Klem, 499 F.3d 199 (3d Cir. 2007)...........................................................................8

Estate of Roman v. City of Newark, 914 F.3d 789 (3d Cir. 2019) ..............................................14

Illinois v. Gates, 462 U.S. 213 (1983) .....................................................................................7

Landol-Rivera v. Cruz Cosme, 906 F.2d 791 (1st Cir. 1990)......................................................10

Maryland v. Pringle, 540 U.S. 366 (2003)................................................................................7

McTernan v. City of York, 564 F.3d 636 (3d Cir. 2009) .......................................................11, 14

Medeiros v. O'Connell, 150 F.3d 164 (2d Cir. 1998)................................................................10

Monell v. Dep't of Social Servs., 436 U.S. 658 (1978)....................................................... *passim*

Morse v. Lower Merion Sch. Dist., 132 F.3d 902 (3d Cir. 1997) ..........................................1 n.1

Mulholland v. Gov't Cnty. of Berks, 706 F.3d 227 (3d Cir. 2013) ...............................................7

Oklahoma City v. Tuttle, 471 U.S. 808 (1985)..........................................................................12

Orsatti v. N.J. State Police, 71 F.3d 480 (3d Cir. 1995) ............................................................8

Renk v. City of Pittsburgh, 641 A.2d 289 (Pa. 1994).................................................................15

Sanford v. Stiles, 456 F.3d 298 (3d Cir. 2006) .........................................................................15

Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997) .......................................................................8

United States v. Watson, 423 U.S. 411 (1976) ..........................................................................7

Wilson v. Russo, 212 F.3d 781 (3d Cir. 2000) ..........................................................................8

**STATUTES AND RULES**

18 Pa. C.S. § 3503(b)(1) .........................................................................................................7

42 Pa. C.S. § 8541.................................................................................................................15

42 Pa. C.S. § 8542.................................................................................................................15

42 Pa. C.S. § 8550.................................................................................................................15

42 U.S.C. § 1983.......................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)..........................................................................................................6

## I.    INTRODUCTION

Plaintiffs Justin Carlson and Rebecca Lombard bring this action arising from their removal from the Children's Hospital of Philadelphia ("CHOP") NICU on August 12, 2024, after they refused to leave the hospital property and CHOP staff asked police officers to remove them. The Complaint brings eight counts against the City of Philadelphia ("City"), including § 1983 claims for familial association, procedural due process, Fourth Amendment seizure, false imprisonment, conspiracy, and state law claims for abuse of process and intentional infliction of emotional distress ("IIED"). Each claim fails as a matter of law and should be dismissed.

The § 1983 claims fail at their threshold because Plaintiffs cannot establish an underlying constitutional violation: the officers had probable cause to believe Plaintiffs were trespassing when CHOP staff told the officers Plaintiffs were not permitted to be there and Plaintiffs were repeatedly asked to leave and refused. Without an underlying constitutional violation, there can be no Monell liability. In any event, Plaintiffs' Monell allegations consist of boilerplate recitations unsupported by any factual allegations and are therefore insufficient to state a claim. To the extent Plaintiffs seek to hold the City liable for the officers' conduct based on *respondeat superior*, that theory is unavailable as a matter of law against a municipality under § 1983. Plaintiffs' state law claims are barred by Pennsylvania's Political Subdivision Tort Claims Act.

## II.    FACTUAL BACKGROUND

Plaintiffs allege V.C. was born at Wayne Memorial Hospital in 2024 with a large scalp discoloration that physicians dismissed as "just a bruise" without advising Plaintiffs of the risks of jaundice or bilirubin.[1]  ECF 1, ¶¶ 27–30, 550–554. A social worker filed a CPSL report (the

---

[1]    The following recitation of Plaintiff's factual allegations is taken from Plaintiff's Complaint and accepted as true for the limited purposes of this motion to dismiss for failure to state a claim. Cudjoe v. Dep't of Veterans' Affairs, 426 F.3d 241, 244 (3d Cir. 2005); Morse v.

"Wayne Report") not for any abuse allegation, but because Rebecca lacked insurance and had no prenatal physician visits. Id. ¶¶ 36–38. The Wayne Report stated "no current child abuse and/or neglect reported." Id. ¶ 47. Dr. Zahid told Plaintiffs V.C. was clear for discharge, had no health concerns, and that jaundice was manageable at home. Id. ¶¶ 40–42. Plaintiffs discharged V.C. on August 5 after Dr. Zahid separately threatened additional CPSL reports because Plaintiffs declined vaccinations. Id. ¶¶ 43–44.

CYS caseworker Smith called on August 5, and Plaintiffs declined services. ECF 1, ¶ 50. On August 7, supervisor Roszel made an unannounced visit and threatened Plaintiffs with court involvement after they refused access, invoked their right to redress, and were not told the Wayne Report contained no abuse finding. Id. ¶¶ 55–62. Fearing an unannounced seizure of V.C., Plaintiffs temporarily relocated to New Jersey to stay with family. Id. ¶¶ 63–65.

On August 9, V.C. stopped feeding and her temperature dropped, and Plaintiffs sought emergency care at Shore Memorial Hospital. ECF 1, ¶ 66. CHOP transported and admitted V.C. on August 10, and Plaintiffs consented to all recommended treatments including transfusion, dopamine, phenobarbital, antibiotics, and lumbar puncture. Id. ¶¶ 68–69. By August 12, V.C. was described as "stable in the last 24 hours," infection tests were negative, and no further life-saving procedures were planned. Id. ¶¶ 71, 74, 190.

On August 12 at approximately 3:30 p.m., CYS Director Graziano telephoned Judge Jason Legg of the Court of Common Pleas of Susquehanna County *ex parte*. ECF 1, ¶ 78. Graziano falsely represented that V.C.'s organs were shutting down and Plaintiffs were denying life-saving care. Id. ¶¶ 78–86, 342, 345. Judge Legg issued a "verbal protective custody order," granting CYS legal and physical custody and barring Plaintiffs from medical decision-making. Id. ¶¶ 80–

---

Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Defendant does not concede the allegations in Plaintiff's Complaint are supported by any factual basis.

81. No CYS employee personally observed V.C. or her care. Id. ¶ 82.  The Pennsylvania Superior Court later held that CYS "set forth no basis for its oral application" and the shelter care application "lacked even a minimum threshold level of reliability."  Id. ¶¶ 346–47.[2]

After the order issued, Roszel falsely told Kunkle that Plaintiffs had threatened CYS staff with violence and directed CHOP social worker Kunkle to file a CPSL report.  ECF 1, ¶¶ 91–95, 350–351.  Kunkle filed the CHOP Report at 3:47 p.m., seventeen minutes after the custody order; Dr. Medoro certified it as a "near fatality" despite knowing V.C. was stable and Plaintiffs had not impaired her care.  Id. ¶¶ 92–93, 355–56.  CHOP staff, coordinating with Graziano by speakerphone, falsely told Plaintiffs a court order barred their access and called Philadelphia police. Id. ¶¶ 104–09, 312.  Officers Doe 1 and Doe 2, who were on duty as City of Philadelphia officers, handcuffed both Plaintiffs inside the badge-restricted NICU without a warrant.  Id. ¶¶ 115–120.  Rebecca was nine days postpartum, and Officer Doe 2 pushed her for walking slowly. Id. ¶¶ 133–134. Plaintiffs were restrained approximately 30 minutes and escorted off CHOP property.  Id. ¶ 136.  The City later reclassified the "Simple Trespass" citations as "Disorderly Conduct."  Id. ¶¶ 138, 144.

On August 13, Graziano verified a shelter care application asserting V.C. was "currently receiving life-saving measures" with "organs reportedly shutting down," without attaching medical records, affidavits, or CPSL reports. ECF 1, ¶¶ 145–51.  At an August 14 shelter hearing, Dr. Medoro, a CHOP employee, testified that infection was a "diagnosis of exclusion," that she had no definitive diagnosis, and that "at no point did this family, for me, impair the medical care of this child."  Id. ¶ 158.  Kunkle testified she had never heard anything about organs shutting down until that day. Id. ¶ 163.  Graziano testified Carlson had not threatened her staff. Id. ¶ 164.

---

[2]     The Pennsylvania Superior Court's opinion is available at: Carlson v. Graziano, No. 1675 MDA 2024, 2026 WL 362532 (Pa. Super. Ct. Feb. 6, 2026).

CYS withdrew its application, and Judge Legg vacated the custody orders, noting the court had never ordered the parents away from their child. Id. ¶¶ 165, 168.

Plaintiffs were barred from medical decision-making for approximately 50 hours and physically separated from V.C. for approximately 52 hours. ECF 1, ¶¶ 172–73. During the custody period, CYS authorized CHOP to perform genetic testing over Plaintiffs' prior objection and without a court order or hearing. Id. ¶¶ 174, 180–82. The test results bore no relationship to V.C.'s emergency. Id. ¶ 185. CHOP refused Plaintiffs' demand to delete the genetic data. Id. ¶¶ 187–88.

After the Shelter Hearing, CYS continued contacting Plaintiffs' and V.C.'s providers. ECF 1, ¶ 195. Plaintiffs, fearing further CPSL reports or arrest, could not freely question V.C.'s treatment. Id. ¶ 196. CHOP performed a hearing screening without consent and billed for it. Id. ¶¶ 212, 217. Physicians required a milk fortifier and conditioned discharge on identifying a follow-up pediatrician, labeling any refusal "against medical advice," the same designation Kunkle testified warranted CPSL reports. Id. ¶¶ 218, 223–24, 233. Chandler faxed V.C.'s medical information to PA Early Intervention without consent. Id. ¶239. V.C.'s discharge was conditioned on a 30g/day weight-gain benchmark. The night before discharge, a nurse fed V.C. before her pre-feed weigh-in, producing a 100g overnight "gain" that triggered discharge. Id. ¶¶ 241–44.

CYS withheld the Wayne and CHOP Reports from Plaintiffs until October 15 — after both were deemed unfounded — and produced all three reports with redactions. ECF 1, ¶¶ 252–54, 258. The Superior Court held the CHOP Report "did not fall within the statutory definition of child abuse" and CYS "lacked authority to initiate the CHOP referral investigation." Id. ¶¶ 260, 360. After Plaintiffs filed injunctions and a bar complaint against McCambridge, Graziano caused a third report (CHOP-Extended Report) to be filed using a letter obtained from V.C.'s follow-up

4

pediatrician, Dr. Lakhani, who testified she had not filed any CPSL report and was unaware Graziano was using her letter to open a new investigation. Id. ¶¶ 273–83.  On November 6, Smith, coordinating with Roszel and McCambridge, verified a dependency petition alleging V.C. was "without proper care or control," despite knowing Dr. Medoro's testimony that both prior reports were unfounded, and that the CHOP-Extended Report confirmed V.C. attended follow-up appointments. Id. ¶¶285–96, 300. The petition was dismissed for no clear and convincing evidence on December 10.  Id. ¶ 304.

Plaintiffs allege without further elaboration that the City maintained policies, practices, and customs including: removing parents from their children at hospital request without requiring officers to review a written order or assess imminent danger; conducting searches and seizures without a warrant or exigency; using excessive force; and altering code violation charges after issuance. ECF 1, ¶ 320.  They allege the City failed to train and supervise officers on constitutional limits governing family separations, reliance on hospital trespass requests to remove lawful parents from their child, the need to confirm and review judicial authority, the requirement of exigency before warrantless searches, seizures, or arrests, and the limitations on force.  Id. ¶ 325.

On the basis of the foregoing factual allegations, Plaintiffs bring eight counts against the City.  Under 42 U.S.C. § 1983, Officers Doe 1 and Doe 2 are alleged to have violated Plaintiffs' Fourteenth Amendment right to familial association and procedural due process by physically removing them from V.C.'s bedside without verifying any court order and without notice or hearing (Counts I and II) (ECF 1, ¶¶ 326–404); to have effected a wrongful Fourth Amendment seizure of V.C. herself by removing her parents from the hospital without any finding of imminent danger, resulting in approximately 52 hours of physical separation (Count III) (id. ¶¶405–12); and to have committed warrantless searches, seizures, excessive force, and false imprisonment against

each Plaintiff individually (Counts IV and V) (id. ¶¶ 413–22).  Plaintiffs name the City in their

conspiracy count for removing Plaintiffs from a location where they had authorized 24-hour access

without a warrant and then altering the citation records from "simple trespass" to "disorderly

conduct" (Count IX) (id. ¶ 467); and in the state law abuse of process count for using the summary

offense trespass process as a substitute for a court order to effectuate a parent-child separation,

followed by the same post-hoc charge alteration (Count XIII) (id. ¶¶ 520–27).  Finally, Plaintiffs

name the City in the IIED count (Count XVIII) (id. ¶¶ 564–569).

For the reasons that follow, Plaintiffs' claims against the City should be dismissed with

prejudice.

## III.    STANDARD OF REVIEW

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must

allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible only when the plaintiff pleads

"factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Threadbare recitals of

elements supported by mere conclusory statements do not suffice.  Id.  The Court need not accept

as true legal conclusions couched as factual allegations.  Id. at 679.  These pleading standards

apply with full force to § 1983 claims against municipalities.  See, e.g., Connick v. Thompson,

563 U.S. 51, 61 (2011).

## IV.    ARGUMENT

**A.    Plaintiffs' § 1983 Claims Against the City Fail Because They Do Not Plausibly Allege an Underlying Constitutional Violation.**

Municipal liability under 42 U.S.C. § 1983 is derivative of an underlying constitutional

violation.  Because Plaintiffs have not plausibly alleged that City employees committed an

6

underlying constitutional violation, the Monell claims fail as a matter of law. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); Mulholland v. Gov't Cnty. of Berks, 706 F.3d 227, 238 n.15 (3d Cir. 2013). Here, the officers had probable cause to arrest Plaintiffs for trespass, negating any Fourth or Fourteenth Amendment violation and collapsing the constitutional foundation on which all of Plaintiffs' § 1983 claims against the City rest.

1.    The Officers Had Probable Cause to Arrest Plaintiffs for Trespass.

Probable cause to arrest exists when the facts and circumstances within the officer's knowledge are sufficient to warrant a reasonable person to believe that an offense has been or is being committed. Illinois v. Gates, 462 U.S. 213, 238 (1983). A warrantless arrest supported by probable cause is constitutionally reasonable under the Fourth Amendment. United States v. Watson, 423 U.S. 411, 417–18 (1976). Critically, probable cause is assessed based on the information available to the officer at the time of arrest, not on facts developed later. Maryland v. Pringle, 540 U.S. 366, 371 (2003).

Under Pennsylvania law, a person commits an offense by entering or remaining in any place where they have been asked to leave by an agent of the owner. 18 Pa. C.S. § 3503(b)(1). Plaintiffs' Complaint establishes each element of that offense. Plaintiffs admit CHOP staff and security repeatedly asked them to leave the NICU. ECF 1, ¶¶98–109. They admit "CHOP security lieutenant Jeff" told them they were "defying trespass right now" and were "restricted from CHOP." Id. ¶ 109. They admit responding officers asked whether they were refusing to leave and that Plaintiffs confirmed they would not leave without a court order. Id. ¶ 110. Accordingly, the facts available to Officers Doe 1 and Doe 2 included: hospital staff and security repeatedly

7

demanded that Plaintiffs leave; CHOP staff represented that a court order existed barring parental access; Plaintiffs openly and expressly refused to comply; and Plaintiffs remained on private hospital property against the explicit instructions of hospital personnel.  Id. ¶¶ 104–10.

Under these circumstances, the officers had probable cause to believe Plaintiffs were committing trespass.  The fact that no written court order existed, or that Plaintiffs were authorized NICU visitors under normal circumstances, does not negate probable cause based on the information available to the officers at the time.  See Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995) (probable cause inquiry focuses on what officer knew at moment of arrest).  The officers were entitled to rely on CHOP staff's representations in assessing the situation; they were not required to independently investigate and resolve a factual and legal dispute between Plaintiffs and hospital personnel before acting.  See Wilson v. Russo, 212 F.3d 781, 790 (3d Cir. 2000) (probable cause may be based upon information supplied by a victim or eyewitness unless the officer possesses independent reason to doubt the person's truthfulness or reliability); Sharrar v. Felsing, 128 F.3d 810, 818–19 (3d Cir. 1997) (police officers may generally rely upon a credible victim's identification and account of events in determining whether probable cause exists, absent circumstances that would undermine the witness's reliability), abrogated on other grounds by Curley v. Klem, 499 F.3d 199 (3d Cir. 2007).

Because the Complaint on its face establishes probable cause for the arrest, Plaintiffs cannot plausibly allege a Fourth Amendment violation arising from the arrests themselves. Without a Fourth Amendment violation, Counts III, IV, and V fail.  And because those counts are the predicate constitutional violations underlying Plaintiffs' Monell and conspiracy theories against the City, Counts I, II, and IX likewise fail.

2.      Plaintiffs' Familial Association and Procedural Due Process Claims Fail Because the Officers Were Entitled to Rely on CHOP Staff's Representations.

Plaintiffs allege Officers Doe 1 and Doe 2 violated their Fourteenth Amendment rights to familial association and procedural due process by removing them from V.C.'s bedside without independently verifying the existence of a court order. ECF 1, ¶¶ 326–404. This theory fails for the same reason: the officers acted on information available to them at the scene. CHOP staff and security repeatedly represented that a court order barred Plaintiffs' access. Id. ¶ 107. Officers responding to a private security request, presented with hospital personnel's repeated assertions that a legal order authorized removal and Plaintiffs' own open refusal to comply, were not constitutionally required to demand production of the underlying order before acting. The Fourteenth Amendment imposed no duty on the responding officers to conduct an independent legal investigation into the validity of hospital personnel's representations before acting.

Moreover, the Third Circuit has recognized that the constitutional right to familial association, while fundamental, must be assessed against the specific facts confronting officers in the field. Croft v. Westmoreland Cnty. Children & Youth Servs., 103 F.3d 1123, 1125–26 (3d Cir. 1997). Unlike in Croft, where the state acted without objectively reasonable grounds to suspect abuse, the responding officers here relied upon hospital personnel's representations that a court order existed and that Plaintiffs had been directed to leave the premises. Because the Complaint affirmatively establishes that the officers acted with an objectively reasonable basis, the Fourteenth Amendment claims against the City fail.

3.      Plaintiffs Fail to Allege Facts Showing the Officers Seized V.C.

Count III fails for the additional reason that the Complaint does not allege the officers seized V.C. within the meaning of the Fourth Amendment. A Fourth Amendment seizure occurs

9

only when governmental conduct terminates or restrains a person's freedom of movement through means intentionally applied.  Brower v. County of Inyo, 489 U.S. 593, 596–97 (1989).  Thus, the Fourth Amendment focuses on the person who is the object of the challenged governmental action, not individuals who are merely affected by it.

Courts have consistently rejected Fourth Amendment claims where the challenged force or restraint was directed at one person but incidentally affected another.  See Brower, 489 U.S. at 596–97 (holding that a seizure occurs only when freedom of movement is terminated through means intentionally applied to the person allegedly seized); Landol-Rivera v. Cruz Cosme, 906 F.2d 791, 795 (1st Cir. 1990) (a hostage struck during police efforts to apprehend an armed suspect was not seized because the officers' conduct was directed at the suspect, not the hostage); Medeiros v. O'Connell, 150 F.3d 164, 169–70 (2d Cir. 1998) (a hostage injured during a police pursuit was not seized because she was not the intended object of the officers' actions); see also Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000) (recognizing that a seizure requires a governmental termination of freedom of movement through means intentionally applied).

Here, Plaintiffs' allegations establish the officers' conduct was directed exclusively toward Plaintiffs and not V.C.  According to the Complaint, CYS obtained legal and physical custody of V.C. pursuant to Judge Legg's protective custody order before the officers arrived.  ECF 1, ¶¶ 80–81, 104–109.  The officers did not remove V.C. from Plaintiffs' custody, take physical possession of her, transport her, or otherwise exercise control over her person.  Rather, they allegedly removed Plaintiffs from hospital property after CHOP personnel requested police assistance.

Accordingly, because the Complaint does not plausibly allege that Officers Doe 1 and Doe 2 seized V.C., Count III fails as a matter of law.

10

4.  The Complaint Attributes the Alleged Constitutional Injuries to CYS, CHOP, and Judge Legg, Not to the City.

Plaintiffs' claims against the City fail for the independent reason that the Complaint attributes the alleged constitutional injuries to the actions of Susquehanna County Children and Youth Services, CHOP personnel, and Judge Legg—not to any policy, custom, or decision of the City of Philadelphia. To establish liability under § 1983, Plaintiffs must plausibly allege that the City's conduct was the moving force behind the alleged constitutional deprivation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Post-Iqbal, courts in this Circuit consistently hold that boilerplate Monell allegations do not state a claim. See, e.g., McTernan v. City of York, 564 F.3d 636, 658–59 (3d Cir. 2009) (plaintiff must "specify what exactly that custom or policy was").

The Complaint repeatedly alleges that the central events giving rise to Plaintiffs' injuries were undertaken by non-City actors. According to the Complaint, Graziano sought the protective custody order from Judge Legg through an ex parte communication; Judge Legg issued the order transferring custody of V.C. to CYS; CHOP personnel informed Plaintiffs they could no longer access their child; CYS exercised legal authority over medical decisions during the custody period; and CHOP performed the challenged medical procedures. ECF 1, ¶¶ 78–109, 145–185. Plaintiffs further allege that CYS continued investigating them, initiated additional reports, and pursued dependency proceedings after the August 2024 events. Id. ¶¶ 195–304.

Against that backdrop, the City's involvement is limited to the conduct of two responding officers who arrived after CHOP requested police assistance and removed Plaintiffs from hospital property. The Complaint contains no factual allegations plausibly showing that the officers participated in obtaining the custody order, directed CYS's investigation, influenced Judge Legg's decision, authorized medical treatment, or exercised authority over V.C.'s custody status. Any

11

alleged separation between Plaintiffs and their child therefore resulted from decisions made by CYS, CHOP, and the Susquehanna County Court—not from any conduct attributable to the City.

Because the Complaint fails to plausibly allege that the City's conduct caused the constitutional injuries of which Plaintiffs complain, all claims against the City should be dismissed.

**B.      Plaintiffs Fail to Allege Sufficient Facts to State a <u>Monell</u> Claim Against the City.**

Even if the Court were to find a cognizable underlying constitutional violation (which the City contests), Plaintiffs' <u>Monell</u> claims are nevertheless inadequately alleged under <u>Twombly</u> and <u>Iqbal</u>.

1.      <u>A Municipality Cannot Be Held Liable Under § 1983 on a *Respondeat Superior* Theory.</u>

At the outset, to the extent Plaintiffs seek to hold the City liable based on the actions of Officers Doe 1 and Doe 2 alone, they cannot do so.  <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable solely because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.").  Municipal liability under § 1983 attaches only where a constitutional deprivation results from an official policy or custom of the municipality itself.  <u>Id.</u> at 694.  A single incident involving one or two officers, standing alone, does not establish municipal liability.  <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823–24 (1985).  The Complaint's § 1983 claims against the City must therefore rise or fall on the <u>Monell</u> allegations, not on the individual officers' conduct.

2.      <u>Plaintiffs' Policy and Custom Allegations Are Conclusory and Unsupported.</u>

To allege <u>Monell</u> liability based on an unconstitutional policy or custom, a plaintiff must identify a specific policy or custom and allege sufficient facts to show that the policy or custom

was the "moving force" behind the constitutional violation. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

The Complaint's Monell allegations against the City consist of four alleged practices attributed to the City: (1) removing parents from children at hospital request without reviewing a written order or assessing imminent danger; (2) conducting searches and seizures without a warrant or exigency; (3) using excessive force; and (4) altering code violation charges after issuance. ECF 1, ¶ 320. These are precisely the kind of boilerplate, categorical recitations that Iqbal and Twombly prohibit. The Complaint identifies no prior incidents, no departmental directives, no training materials, no disciplinary records, no pattern of similar conduct, and no other factual basis from which the Court could plausibly infer that these alleged practices reflect an established City policy or custom, as opposed to the isolated conduct of two officers on a single occasion. A plaintiff cannot establish a municipal custom or policy simply by pleading the elements of Monell liability in conclusory terms and pointing to the facts of the incident itself. Tuttle, 471 U.S. at 824 ("[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.").

Plaintiffs' failure-to-train allegations are similarly deficient. ECF 1, ¶ 325. To state a failure-to-train claim, a plaintiff must allege that the municipality's training program was inadequate, that the inadequacy reflected deliberate indifference to constitutional rights, and that the inadequacy caused the deprivation. City of Canton v. Harris, 489 U.S. 378, 389–91 (1989). Deliberate indifference in this context requires a showing that the need for more or different training was "so obvious" that the municipality's failure to act "amounts to deliberate

indifference." Id. at 390.  Plaintiffs allege only that the City "failed to train and supervise officers" on a list of constitutional topics.  ECF 1, ¶ 325.  They allege no facts about what training the City provided, what it lacked, how any deficiency was obvious to City policymakers, or how it caused the violation alleged here.  This formulaic recitation of the failure-to-train standard is insufficient to survive dismissal.  See, e.g., McTernan, 564 F.3d at 658–59 (affirming dismissal of Monell claim where plaintiff merely alleged the existence of a municipal policy without identifying the policy with specificity or pleading facts showing a causal connection between the policy and the alleged constitutional violation); Estate of Roman v. City of Newark, 914 F.3d 789, 798–99 (3d Cir. 2019) (holding that although a plaintiff need not identify a specific policy at the pleading stage, a Monell claim must include factual allegations permitting a plausible inference of an unlawful municipal custom or policy; conclusory recitations of Monell elements are insufficient under Iqbal and Twombly).

3.    Plaintiffs' Allegation that the Officers Changed the Charges Against Them Does Not State a Constitutional Violation or Municipal Policy.

Plaintiffs allege the City altered their citations from "simple trespass" to "disorderly conduct" after the fact.  ECF 1, ¶¶ 138–144.  This allegation, even taken as true, does not state a constitutional claim actionable under § 1983.  Plaintiffs do not allege that they were prosecuted on the altered charges, that the alteration caused any adverse legal proceeding, or that it resulted in any cognizable constitutional deprivation.  An administrative reclassification of a summary offense citation, without more, does not rise to the level of a constitutional violation.  And without a constitutional violation, the City cannot be held liable under § 1983 for that conduct.

14

**C.      Plaintiffs' State Law Claims Against the City Are Barred by the Pennsylvania Political Subdivision Tort Claims Act.**

Plaintiffs assert state law claims against the City for abuse of process (Count XIII) and IIED (Count XVIII).  Both are barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S. §§ 8541–8542 ("PSTCA").

The PSTCA provides "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. C.S. § 8541.  This immunity is sweeping: it covers all tort claims against municipalities and their employees unless the claim falls within one of nine narrowly defined statutory exceptions.  Id. § 8542(b).  Those exceptions cover: vehicle liability, care of personal property, real property, trees and traffic controls, utility service facilities, streets, sidewalks, animals, and sexual abuse.

Neither abuse of process nor IIED falls within a PSTCA exception.  Pennsylvania courts have consistently held that intentional torts, such as abuse of process and IIED, do not fall within any of the nine PSTCA exceptions and are therefore barred.  See Renk v. City of Pittsburgh, 641 A.2d 289, 292 (Pa. 1994) (PSTCA bars intentional tort claims against municipalities).  Moreover, neither abuse of process nor IIED falls within one of the nine specific statutory exceptions to immunity.  42 Pa. C.S. § 8542(b).

To the extent Plaintiffs would argue the officers' conduct constituted "willful misconduct" sufficient to impose individual liability under 42 Pa. C.S. § 8550, that provision is inapplicable to claims against the City itself.  Section 8550 removes immunity only for individual employees acting with actual malice or willful misconduct; it does not expose the municipal entity to liability.  Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006).

15

Accordingly, Plaintiffs' state law claims against the City are barred under the PSTCA and must be dismissed with prejudice.

## V.    CONCLUSION

For the foregoing reasons, the City of Philadelphia respectfully requests that the Court dismiss all claims against it with prejudice.

Respectfully submitted,

Date: June 24, 2026

*/s/ Laquan T. Lightfoot*
Laquan T. Lightfoot, Esq.
Senior Attorney
Attorney Identification No. 318716
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA  19102-1595
(215) 685-8403
*laquan.lightfoot@phila.gov*
*Counsel for Defendant, City of Philadelphia*

16